**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| TRAIL DR., LLC | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | NO: 4:11CV00173  SWW |
| SILVER HILL FINANCIAL, LLC; | * | |
| MANUFACTURERS AND TRADERS | * | |
| TRUST COMPANY; BAYVIEW | * | |
| LOAN SERVICING, LLC; and | * | |
| WACHOVIA COMMERCIAL | * | |
| MORTGAGE, INC. | * | |
| | * | |
| Defendants | * | |
| | * | |

**ORDER**

Plaintiff  Trail Dr., LLC ("Trail") filed this action in state court against Silver Hill Financial, LLC ("Silver Hill"),  Manufacturers and Traders Trust Company ("M&T"), and Bayview Loan Servicing, LLC ("Bayview"), alleging, among other things, that Defendants violated Arkansas usury law.  Defendants removed the case to federal court, asserting subject matter jurisdiction on the basis of complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000.

The case is before the Court on cross motions for summary judgment (docket entries #47, #48, #49, #50 through #66), responses in opposition (docket entries #67, #69, #68, #70), and replies in support (docket entries #71, #72).  After careful consideration, and for reasons that follow, Defendants' motion for summary judgment will be granted, and this case will be dismissed with prejudice.

**I.**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).   "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II.

The following facts are undisputed.[1]  Trail, a limited liability company, was formed by Aviva Janofsky ("Janofsky") and Joseph O'Sullivan ("O'Sullivan").  On August 22, 2006, Janofsky and O'Sullivan entered a real estate sales  contract with non-party James Thompson for

---

[1]Local Rule 56.1 provides that a party moving for summary judgment must submit a statement of the material facts as to which it contends there is no genuine issue to be tried, and the non-moving party must file a responsive statement of the material facts as to which it contends a genuine issue exists to be tried.  "All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . . " Local Rule 56.1(c).

the purchase of a mobile home park located in Mabelvale, Arkansas.   The sales contract makes

the offer to purchase contingent on obtaining satisfactory financing, in the buyer's sole

discretion, within 30 days after acceptance.  *See* docket entry #52, Ex. #20 (Real Estate Contract,

¶16).  The contract provides:

> Buyer shall notify Seller in writing when the contingencies are satisfied.  If Buyer
> fails to provide such written notice before the [30-day deadline] that a contingency
> . . . has been satisfied, then this [contract] shall be void and the Earnest Money shall
> be refunded to the Buyer, and the Buyer and Seller shall have no further obligation
> to each other.

*Id*.

After obtaining loan terms from several lenders, Janofsky and O'Sullivan executed two

adjustable rate promissory notes in favor of Silver Hill: a note for the principal amount of

$185,600 ("First Note") and a note for the principal amount of $23,200 ("Second Note").   Trail

is named borrower on the First and Second Notes, and O'Sullivan and Janofsky personally

guaranteed Trail's loan debt.

Before closing the loans, Silver Hill issued two forms titled "Final Loan Term Sheet" to

Janofsky and O'Sullivan, which "outlines certain key business terms and conditions of the

proposed loan with Silver Hill Financial, LLC."  Docket entry #47, Exs. #1, #2   The Final Loan

Term Sheets outline the interest rate of the proposed loans as follows: "Fixed at 9.750% for the

first 84 months.  Thereafter, Prime Rate (currently 8.23%) plus 2.375 adjusted every six (6)

months."  *Id*.   Additionally, the documents outline two prepayment penalties that would apply if

the borrower repaid the principal balance during the "Lockout Period," defined as the initial

seven years of the thirty-year amortization period.  The prepayment penalties described in the

Final Loan Term Sheets include: (1) a prepayment fee equal to five percent of the unpaid balance

and (2) an amount equal to "all interest accrued during the Lockout period on the then-

outstanding principal balance of the Loan."[2]   O'Sullivan read and understood the Final Loan Term Sheets, and he and Janofsky signed them.

The real estate sale and related mortgage transactions closed on November 7, 2006.  The closing documents that required O'Sullivan's and Janofsky's signatures were dispatched to them by overnight delivery.  O'Sullivan, as representative for Trail, read all of the closing documents, including the First and Second Notes, before he signed and returned them to the closing company in Arkansas.

Paragraph 1 of the Notes provides an initial interest rate of 9.750% per annum for the first eighty-four months of the loan term, to be adjusted on specified change dates.  *See* docket entry #47, Exs. #3, #4.  The Notes provide that the interest rate will not be increased or decreased more than 2% on the initial change date or more than 1.5% on subsequent change dates.  *Id*.  Paragraph 7 of the Notes, set forth below, concerns prepayment penalties:

7.    PREPAYMENT

    a.    <u>Lockout Period</u>: Borrower shall not be permitted to make any full or partial prepayment of the principal balance of this Note (a "Prepayment") prior to that date

---

[2]The Final Loan Term Sheets read, in pertinent part, as follows:

PREPAYMENT: Borrower will incur a prepayment fee equal to 5% of unpaid principal balance if prepaid during first 7 yrs.

LOCKOUT: Loan may not be repaid in whole or in part at anytime during the first 7 years of the term (the "Lockout Period"). If Borrower makes any prepayment during the Lockout Period, Borrower shall be required to pay the prepayment penalty plus all interest accrued during the Lockout Period of the then outstanding principal balance of the Loan.

Docket entry #47, Exs. #1, #2.

that is eighty-four (84) months after the date of this Note (the "Lockout Period"). If, for any reason, a Prepayment is made during the Lockout Period (a "Lockout Prepayment"), Borrower shall, simultaneously therewith, be obligated to pay: (i) the aggregate amount of interest which ***would have*** accrued on the unpaid principal balance of this Note from the date of such Lockout Prepayment through the expiration date of the Lockout Period (the "Lockout Fee"), plus (ii) all amounts specified in Section 7(b) below).

b.   <u>Prepayment Period</u>:  At any time during the Prepayment Period (as defined below), the principal balance of this Note may be prepaid in whole, but not in part, pursuant to the terms contained in this Section 7.   If Borrower makes any Prepayment within the first Seven years after the date of this Note (the "Prepayment Period"), the Borrower shall be obligated to pay to Lender the following amounts:

(i) an amount equal to Five percent (5.000%) of the then outstanding unpaid principal balance of this Note (the "Prepayment Consideration"); and

(ii) all accrued interest on the outstanding principal balance to and including date on which the Prepayment is made; and

(iii) all other sums due under this Note, the Security Instrument and all Other Security Documents.

c.   <u>Prepayments Without Consideration</u>:   No Prepayment Consideration or Lockout Fee (if any) shall be due or payable with respect to any full or partial Prepayment made by Borrower after expiration of the Prepayment Period.

d.   <u>Notice of Prepayment</u>:   Prior to making any Prepayment, Borrower must provide Lender with not less than sixty (60) days advance written notice of Borrower's intent to make such Prepayment. Such notice must specify: (i) the date on which Prepayment is to be made, and (ii) the principal amount of such Prepayment. Lender shall not be obligated to accept any Prepayment unless it is accompanied by all other amounts due in connection therewith.

Docket entry #47, Exs. #3, #4(emphasis added).  Paragraph 16 of the Notes contains a merger clause stating the Notes, the security instrument and other security documents represent the final agreement between the parties. *Id*.

In exchange for the First and Second Notes, Trail received $208,800 for purchase of the mobile home park.  Trail made payments on the First and Second Notes through May 8, 2010,

but then ceased making any payments.

By early 2010, Trail's mobile home park was uninhabited and in disrepair.  *See* docket entry #47, Ex. A (O'Sullivan Dep. at 109, 116).  According to O'Sullivan, the prepayment penalties associated with the Notes prevented Trail from selling the park or obtaining funds through refinancing.  *Id.*, at 117.   Trail requested and received payoff statements from the loan servicers, Defendants M&T and Bayview.  M&T issued a payoff statement for the First Note, showing a total payoff of  $264,220.43, which included $78,557 in prepayment consideration. *See* docket entry #65, Ex. #18.  Bayview issued a payoff statement for the Second Note, showing a total payoff of $33,949.20, which included prepayment consideration of $1,135.10 and a lockout fee of $6,755.59.  *See* docket entry #65, Ex. #19.   Trail never attempted to prepay the Notes, and has never paid prepayment consideration or lockout fees under the Notes.

Trail commenced this lawsuit on January 18, 2011, claiming that Silver Hill, Bayview, and M&T charged usurious interest rates and committed unconscionable conduct in violation of the Arkansas Deceptive Trade Practices Act.  Additionally, Trail brings a separate fraud claim against Silver Hill, claiming that Silver Hill induced it to make the First and Second Notes by misrepresenting an effective interest rate of 9.75%.   Trail seeks summary judgment as to all claims.

## III.

## Usury

Arkansas's usury law,[3] set out in the Arkansas Constitution, provides: "The maximum lawful rate of interest on any contract ... shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract." Ark. Const. art. 19 § 13(a)(i) (1987). Usurious contracts are void as to the amount of usurious interest,  and a party who has been subjected to usurious interest is entitled to recover double the amount of such interest.  *See* Ark. Const. art. 19 § 13(a)(ii).

Where usury is not apparent from the face of a contract, the borrower must show that the lender intended to exact a usurious interest rate.  *See Medford v. Wholesale Electric Supply Co., Inc*., 286 Ark. 327, 691 S.W.2d 857 (1985).   And, because the penalty for a usurious transaction is heavy, the burden is on the plaintiff to show usury by clear and convincing evidence.  *See Carter v. Four Seasons Funding Corp.,* 351 Ark. 637, 653, 97 S.W.3d 387, 395 (2003)(citing *Haley v. Greenhaw*, 235 Ark. 481, 360 S.W.2d 753, 757 (1962)).  "Clear and convincing evidence is that evidence which produces a firm conviction in the factfinder that the allegation at issue is true."  *Id*.

"In determining whether a contract is usurious it must be viewed as of the time it was

---

[3]Paragraph 11 of the First and Second Notes state:  "This Note shall be governed, construed, applied and enforced in accordance with the laws of the state in which the real property is located."  Docket entry #47, Exs. #3, #4.   In a diversity suit, the effect of the choice-of-law provision is governed by the forum state's choice-of-law principles. *See Schwan's Sales Enters., Inc. v. SIG Pack, Inc*., 476 F.3d 594, 597-98 (8th Cir.2007).   Arkansas will honor a choice-of-law clause  "'provided that the law selected is reasonably related to the transaction and does not violate a fundamental public policy of the state.'"  *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir.2007).  Here, both Notes provide that they are secured by a mortgage encumbering real property located in Saline County, Arkansas, and the Court finds no evidence that the application of Arkansas law would violate fundamental public policy of Arkansas.  Accordingly, the Court finds that Arkansas law governs the substantive issues presented.

entered into and it must be presumed that it will be performed according to its terms." *Winkle v. Grand Nat. Bank,* 267 Ark. 123, 139, 601 S.W.2d 559, 567 (1980)(citations omitted).  Here, it is undisputed that when Trail signed the Notes on November 7, 2006, the maximum lawful interest rate in Arkansas was 11.25%.   Accordingly, to prove usury, Trail must  demonstrate that Silver Hill intended to charge more than the 11.25% limit, *see Bunn v. Weyerhaeuser Co*., 268 Ark. 445,  598 S.W.2d 54, 56 (1980), and such intent cannot be presumed when the opposite result can "fairly and reasonably be reached." *Key v. Worthen Bank & Trust Co.*, 260 Ark. 725, 543 S.W.2d 496, 498 (1976).

In its complaint, Trail asserts that Defendants charged usurious interest rates based on the prepayment charges and lockout fees provided in the Notes and itemized in the payoff statements issued by M&T and Bayview.  Complaint ¶¶ 11-24.  Additionally, in support of its motion for summary judgment, Trail points to other charges that it contends amount to interest.

**Prepayment Charges and Lockout Fees**

Defendants assert that if the Notes were paid according to their terms, with monthly payments for a thirty-year term, Trail would not pay an amount in excess of the principal loan amount plus a legal interest rate.  Defendants further assert that under Arkansas law, the prepayment charges and lockout fees do not constitute interest.

The Arkansas Supreme Court has long held that if an installment contract would not be usurious if paid according to its terms, the debtor's voluntary election to prepay the debt in full does not make the transaction usurious, even if the creditor receives, in the aggregate, a sum more than the principal and maxim legal rate of interest.  *See Winkle v. Grand Nat. Bank*, 267 Ark. 123,  139, 601 S.W.2d 559, 568(citing *Eldred v. Hart*, 87 Ark. 534, 113 S.W. 213 (1908));

8

*see also Mid-America Development Corp. v. Arkansas Sav. and Loan Ass'n,* 257 Ark. 850, 852, 520 S.W.2d 238, 239 (1975).

Trail argues that Arkansas Supreme Court's decision in *Sosebee v. Boswell*, 242 Ark. 396, 414 S.W.2d 380, *cert. denied*, 389 U.S. 953, 88 S.Ct. 337 (1967), limits the well-established rule that prepayment penalties associated with voluntary prepayment do not constitute interest. In *Sosebee***,** residential developers obtained a loan for the purchase of fifty-one residential lots. In addition to receiving interest on the loan, the lender secured an escrow agreement that required the developers to forfeit escrow deposits unless lot purchasers placed their loans through the lender.  The Supreme Court of Arkansas held that the forfeited deposits amounted to interest for the purpose of determining whether the loan agreement was usurious.

Two principles guided the *Sosebee* decision: (1) when a contract provides for repayment of principal and interest at the highest legal rate plus an additional profit payable upon a contingency that is not within the control of the debtor, the contract is usurious, and (2) a lender cannot impose on the borrower charges that in fact constitute the lender's overhead expenses and cost of doing business.  *Sosebee*, 242 Ark. at 400, 414 S.W.2d at 382.  The Court held that the escrow agreement violated the first principle because the borrowers  "had not even a semblance of control" over the contingency at issue.   *Sosebee*, 242 Ark. at 399-400, 414 S.W.2d at 382. The Court noted that the borrowers could not compel a lot purchaser to seek financing from a particular lender, and they had no voice in the lender's decision to approve a purchaser's loan application.

The Court further held that the escrow agreement ran "counter to the [second principle] that the lender's overhead expenses cannot be foisted off on the borrower as something other

9

than interest on the loan." *Sosebee*, 242 Ark. at 401, 414 S.W. 2d at 383.  In reaching this conclusion, the Court rejected the argument that the escrow deposits merely covered the lender's expenses related to the underlying loan and noted that the lender was guaranteed the payment regardless of whether it incurred such expenses.

The Court finds no similarities between *Sosebee* and this case.   In *Sosebee*, profit exacted by the lender was treated as interest because it depended upon contingencies that were not within the control of the debtor.   Here, however, Trail cannot be compelled to prepay the loans.  Trail argues that the prepayment penalties provided under the Notes violate the second principle stated in *Sosebee* because the lockout fee and prepayment penalties protect Defendants' profit.  Under Arkansas law, however, a prepayment penalty is viewed as bargained consideration for the right to voluntary prepay, not compensation for the use of money.  *See Mid-America Development Corp. v. Arkansas Sav. and Loan Ass'n* 257 Ark. 850, 852, 520 S.W.2d 238, 239 (Ark. 1975). Under the facts presented, neither the  lockout fees nor the prepayment penalties constitute interest for the purpose of determining whether Defendants violated Arkansas usury law.

**Other Charges and Fees**

*Default Interest Charge*.  Trail reports that Defendants have attempted to collect default interest under the Notes based on Trail's failure to make payments.  Trail argues that "default interest is interest, and when added to the interest paid, it exceeds the usury limit."   Docket entry #29, at 8.

Paragraph 4 of the Notes provides that the lender may declare a default upon several specified occurrences, including the borrower's failure to make a payment when due.  Further,

paragraph 5 of the Notes provides that the borrower agrees that in the event of default, the borrower shall pay interest on the entire unpaid principal sum at a per annum rate equal to the lesser of 10% plus the applicable interest rate or the maximum interest rate which the borrower may by law pay.

Trail argues that because the declaration of default is under the control of the lender, the default interest charge is interest for the purpose of determining whether the Notes are usurious. However, because Trail has control over the conditions that would entitled Silver Hill to declare a default and has the power to avoid a default penalty, the default interest provision does not support a usury claim. *See Hayes v. First Nat. Bank of Memphis,* 256 Ark. 328, 331, 507 S.W.2d 701, 703 (1974)(citations omitted)(noting that "penalties to induce prompt payment are free from usury, because the buyer has it in his power to avoid the penalty by discharging the debt when it is due"). Nothing in the record indicates that Silver Hill included the default interest provision for the purpose of avoiding the usury limitation, and language limiting the penalty to the maximum interest rate permitted under law evinces the opposite intention.

*Fees and Charges Itemized in the Payoff Statements.* Trail points to fees and charges itemized in the payoff statements that Defendants "attempted" to collect, including document preparation fees, fax fees, release fees, and payoff letter fees. Under Arkansas law, if a fee is profit for the lender or covers the lender's overhead expenses or cost of doing business, then the fee is characterized as interest for the purposes of the usury determination. But, if the fee is properly paid by the lender to a third person or collected in good faith for the purpose of being reimbursed to a third person, it cannot be characterized as interest. *See Johnston v. Citizens Bank & Trust Co. of Flippin, Ark.,* 659 F.2d 865, 868 (8th Cir. 1981)(citing *Arkansas Savings &*

*Loan Ass'n v. Mack Trucks*, 263 Ark. 264, 566 S.W.2d 128, 130 (1978); *Lockhart v. G.M.A.C.*, 252 Ark. 878, 481 S.W.2d 350, 351 (1972); *Harris v. Guaranty Financial Corp.*, 244 Ark. 218, 424 S.W.2d 355, 357-58 (1968)). "The purpose of the fee and its recipient are critical." *Id*.

Here, Trail presents no evidence showing that fees itemized on the payoff statements were not legitimate fees that would have been collected for reimbursement to third parties.

*Fees Paid at Closing.* Trail asserts that charges it paid at closing amount to interest and elevate the interest charged beyond the legal limit. The first charge is one month's advance interest for 23 days, covering the period from November 8 to December 1, 2006, at a rate of 9.75%. The Notes provide that the first installment payment shall be due on January 1, 2007, and because Trail received the loan proceeds in November 2006, the pro-rated interest charge due at closing did not cause Trail to pay more interest than the contract rate of 9.75% per annum. *See Johnson v. Federal Nat. Mortg. Ass'n*, 271 Ark. 588, 589, 609 S.W.2d 60, 61 (1980)(noting that collecting interest due on a note before the first payment is standard practice).

The second charge is an appraisal fee. Trail argues that an appraisal is specifically for the benefit of the lender because "without an appraisal, the lender does not know how much money it is willing to lend." Docket entry #69, at 10. However, a charge for appraisal services related to a loan is not improper solely because it benefits the lender. *See Harris*, 244 Ark. at 223, 424 S.W.2d at 358. A lender may require the borrower to pay the actual and reasonable expense of appraising security offered for a loan without rendering the transaction usurious, "particularly if the charge is reasonable, is made in good faith and is reimbursement for payment to a third person for something appropriate to establishing or protecting the lender's security." *See Lockhart*, 252 Ark. at 880, 481 S.W.2d at 351. Trail asserts that Silver Hill engaged an

"affiliate entity" for appraisal services, but Trail presents no evidence that the fee charged was unreasonable or that Silver Hill failed to pay the fee to a third party.[4]

The third charge is a mortgage broker fee.  Trail argues that the broker's fee is interest "masked as a commission payable to lender's agent."  Docket entry #69, at 9.  However, O'Sullivan testified that he personally selected the mortgage broker that received the fee, docket entry #47, Ex. A (O'Sullivan Dep. at 30-32), and Trail provides no evidence that Silver Hill failed to pay the broker's fee reflected on the settlement statements.

The remaining fees charged at closing that Trail claims amount to interest include charges  for processing, flood certification, and environmental records search and processing. Trail generally argues that these charges defrayed Silver Hill's cost of doing business, but Trail presents no evidence to support a finding that the charges do not qualify as legitimate fees paid over to third parties.  *See Moore v. Owens*,  268 Ark. 324, 327, 597 S.W.2d 65, 66 (1980)("The note was not usurious on its face and a party who pleads usury has the burden to prove it by clear and convincing evidence.").

In sum, the Court finds that Trail has failed to present evidence showing genuine issues for trial with respect to its usury claim.

## Unconscionability and Deceptive Trade Practices

Trail asserts that the prepayment and lockout provisions  should not be enforced because

---

[4]A copy of the appraisal report dated October 3, 2006 states that Craig D. Lackie, a certified appraiser from Searcy, Arkansas, appraised the mobile home park for Pace Realty Advisors.  *See* docket entry #53, Ex. 5(a).

they are unconscionable and violate the Arkansas Deceptive Trade Practices Act.[5]   Whether a particular contract or provision is unconscionable depends on the totality of the circumstances surrounding the negotiation and execution of the contract.  *See State v. R&A Inv. Co., Inc*., 336 Ark. 289, 296, 985 S.W.2d 299, 302 (1999)(citations omitted).   Two important considerations are (1) whether there is a gross inequality of bargaining power between the parties to the contract and (2) whether the aggrieved party was made aware of and comprehended the provision in question.  *Id*.

A party must prove both procedural and substantive unconscionability before a contract or contract provision will be declared unenforceable.  *See Easter v. Compucredit Corp.,* No. 08-CV-1041, 2009 WL 499384, at *4 (W.D. Ark. Feb. 27, 2009)(holding that the Arkansas test for unconscionability, which requires consideration of the totality of the circumstances, requires that both procedural and substantive unconscionability be present); *see also Gobeyn v. Travelers Indem. Co.,* No. 1:09CV00034 JLH, 2009 WL 3148755, at *3 (E.D. Ark. Sept. 24, 2009)(citing *Enderlin v. XM Satellite Radio Holdings, Inc*., No. 4:06CV0032 GTE, 2008 WL 830262, at *8 (E.D.Ark. Mar. 25, 2008)).   Substantive unconscionability looks to the terms of the contract and whether they are one-sided.  Trail claims that the contract terms are substantively unconscionable because they charge a usurious interest rate.  But for reasons previously stated, the Court finds no support for Trail's usury claim.   Furthermore, a prepayment penalty provision

---

[5]The Arkansas Deceptive Trade Practices Act ("ADTPA") prohibits "any . . . unconscionable, false, or deceptive act or practice in business, commerce, or trade."  Ark. Code Ann. § 4-88-107(a)(10).  The ADTPA provides a private cause of action for any person who suffers actual damage or injury as a result violation of the Act.  *See* Ark. Code Ann. §  4-88-113(f).

included in a loan agreement is not intrinsically unconscionable. *See Mid-America Development Corp. v. Arkansas Sav. and Loan Ass'n* 257 Ark. 850, 852, 520 S.W.2d 238, 239 (Ark. 1975)("[A]fter having incurred the expenses incident to making a . . . loan that was to have been repaid over a period of many years, [a lender] might reasonably have found it necessary to make a prepayment charge to avoid a loss on the transaction.").

Procedural unconscionability concerns the contract formation process, the manner in which it was entered, the fine print of the contract, any misrepresentations, and any unequal bargaining power. *See Pleasants v. American Exp. Co*., 541 F.3d 853, 857 (8th Cir. 2008). Trail asserts that it is a small liability company with no bargaining power[6] and that Silver Hill had it "over the barrel" because it had only thirty days to secure financing. However, Trail provides no evidence that Silver Hill had control over the terms of the real estate sales contract, which provided Trail only thirty days in which to secure financing for its purchase. Nor is there evidence that Silver Hill imposed unnecessary time constraints that forced O'Sullivan to sign the Notes before he had time to comprehend the terms of the agreements.

O'Sullivan, a college-educated and self-employed real estate investor who works out of his home, testified that when he read the Notes, he did not understand that the lockout fee included all interest that *would have accrued* during the lockout period. The Final Loan Term Sheets provide that if the borrower makes a prepayment during the lockout period, the borrower will be required to pay a lockout fee of "all interest accrued during the Lockout Period of the

---

[6]Unequal bargaining power, standing alone, is not enough to invalidate a contract. "There must be some evidence that the party holding the superior bargaining power exerted that power in overreaching the less sophisticated party by, for example, engaging in fraud or coercion or by insisting on an unconscionable clause." *Sander v. Alexander Richardson Investments,* 334 F.3d 712, 720 (8th Cir. 2003).

then outstanding principal balance of the Loan." Docket entry #47, Exs. #3, #4.   But paragraph 7 of the Notes imposes a lockout fee equal to "the aggregate amount of interest which *would have accrued* on the unpaid principal balance . . . from the date of such Lockout Prepayment through the expiration date of the Lockout Period . . . . "[7]  Docket entry #47, Exs. #3, #4(emphasis added).  According to O'Sullivan, his understanding of the prepayment terms were based on his reading of the Final Loan Term Sheets.  O'Sullivan testifies by affidavit that he received over 200 documents at closing, and he had no opportunity to review and understand the Notes before he signed them. *See* docket entry #69, Ex. #11, ¶ 3.  But O'Sullivan acknowledged in deposition that he read the Notes before he signed them and that, although his time was limited, he had the opportunity to seek the advice of counsel before he signed. *See* docket entry #47, Ex. A (O'Sullivan Dep. at 78, 84-85).

Trail claims that Silver Hill attempted to hide the "draconian" prepayment terms set forth in the Notes by providing different terms in the Final Loan Term Sheets.  But Trail does not dispute that paragraph 7 of the Notes, which represents the final agreement between the parties, clearly states that if the borrower makes a prepayment during the lockout period, the borrower will be obligated to pay interest which would have accrued from the date of the prepayment through the expiration of the lockout period.  Generally, one is bound to know the contents of a document signed by him, and if he has the opportunity to read it before he signs, he cannot

---

[7]Defendants note that the Final Loan Term Sheets define "Lockout Period" as the first 7 years of the term of the Notes, and they argue that when that definition is substituted for the term "Lockout Period," the Final Loan Term Sheets require the borrower to pay all interest "that would have accrued" during the first seven years of the Notes.  However, the Final Loan Term Sheets clearly state that the borrower shall be required to pay "all interest accrued" during the first 7 years of the loan, not all interest that "would have" accrued during that period.

escape the obligations imposed by the document by merely stating that he did not read it.  *See Alexander v. Flake*, 322 Ark. 239, 246, 910 S.W.2d 190, 194 (1995).

Finally, Trail charges that  "Silver Hill falsely represented the interest rate to be less than the actual rate" by hiding the method by which interest would be calculated.  The Final Loan Term Sheets provide that the interest rate for both loans would be 9.750% for the first 84 months, but they contain no information as to how interest would be calculated.  *See* docket entry #47, Exs. #1, #2.   Paragraph 1 of the Notes provides an interest rate of 9.750% per annum and states:  "Interest shall be computed on the actual number of days elapsed and an assumed year of 360 days."  Docket entry #47, Exs. #3, #4.  Trail argues that Defendants deviated from the interest rate set forth in the Final Loan Term Sheets by including the provision that interest would be calculated according to a 360-day year.   According to Trial, by employing a 360-day year, Silver Hill altered the normal definition of "per annum."

The Final Loan Term Sheets do not state that interest would be calculated according to a 365-day year, and they contain no information as to how interest would be calculated.  The record is void of evidence that Silver Trail camouflaged or misrepresented the 360-day method provided under the Notes.  Furthermore, the Arkansas Supreme Court has held that "for practical, legal, and historical reasons," the use of the 360-day year is lawful, even when the contract interest rate is the maximum rate allowed by law.  *See Martin v. Moore,*  269 Ark. 375, 376, 601 S.W.2d 838, 839 (1980)

The Court finds that Trail has failed to come forward with evidence of procedural or substantive unconscionability or evidence that Defendants committed a deceptive or unconscionable trade practice.

**Fraud**

Under Arkansas law, the elements of an action for fraud are "(1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance." *Goforth v. Smith*, 338 Ark. 65, 991 S.W.2d 579, 586 (1999).

In support of its fraud claim, Trail charges that (1) Silver Hill made false representations of material fact in the Final Loan Term Sheets regarding the lockout fee and method for computing interest;  (2) Silver Hill had knowledge of the false representations because they appeared on Silver Hill's regularly used, standard business documents; [8] (3) Silver Hill used the word "Final" on the Final Loan Term Sheets for the purpose of inducing Trail to agree to the loan; (4) Trail justifiably relied on the false representations because it had no reason to expect that the lockout fee terms would change; and (5) Trail has suffered damage because it has been held "financially hostage" by the prepayment penalty.

Silver Hill asserts, among other things, that it is entitled to summary judgment because Trail is unable to show justifiable reliance.  The Court agrees.  Silver Hill did not conceal from Trail the terms set forth in the Notes.  Furthermore,  O'Sullivan had the opportunity to read the final terms before he signed the Notes.  As previously noted, O'Sullivan has acknowledged that he read the Notes and had the opportunity to seek the advice of counsel before he signed them.

---

[8]Trail argues: "If a business has a standard document that it uses regularly, then it makes sense to think that the business using it has aware of what it says.  Alternatively, if the business is not aware of what the standard documents says that it regularly uses, then it should be held accountable for not being aware of what is in the standard documents that it presents to customers when those documents include false representations."   Docket entry #51, at 11.

Because Trail could have learned final terms of the lockout fee through diligent attention and observation to the terms of the Notes but failed to do so, Trail cannot show that it justifiably relied on terms set forth in the Final Loan Term Sheets.   *See Brookside Village Mobile Homes v. Meyers*, 301 Ark. 139, 782 S.W.2d 365 (1990)(holding that the burden of proving fraud requires not only a showing that plaintiffs were without knowledge of the facts, but that ascertainment of undisclosed facts were not within reach of plaintiffs diligent attention and observation).

**IV.**

For the reasons stated, the Court finds that Defendants are entitled to summary judgment in their favor.  It is therefore ordered that Defendants' motion for summary judgment (docket entry #47) is GRANTED, and Plaintiff's motion for summary judgment (docket entry #50) is DENIED.  Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 7TH DAY OF JUNE, 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE